IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSSETS

| | |
|---|---|
| STEVE BARTA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ANALOGIC CORPORATION, FRED B. PARKS, BERNARD C. BAILEY, JEFFREY P. BLACK, JAMES J. JUDGE, MICHAEL T. MODIC, STEPHEN A. ODLAND, and JOSEPH E. WHITTERS,<br><br>Defendants. | Civil Action No. _____<br><br>COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff, Steve Barta ("Plaintiff"), by and through his attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction (the "Proposed Transaction" or "Merger") announced on April 10, 2018, pursuant to which Analogic Corporation ("Analogic" or the "Company") will be acquired by Altaris Capital Partners, LLC ("Altaris") through its affiliate ANLG Holding Company, Inc. ("Parent") and Parent's wholly owned subsidiary, AC Merger Sub, Inc. ("Merger Sub").

2. On April 10, 2018 Analogic's Board of Directors (the "Board" or the "Individual Defendants") caused the Company to enter into an Agreement and Plan of Merger (the "Merger Agreement") with Parent and Merger Sub. Pursuant to the terms of the Merger Agreement, each share of Company common stock (other than shares held by shareholders seeking appraisal or

shares owned by any subsidiary of Analogic or Parent) will be converted into the right to receive $84.00 in cash (the "Merger Consideration").  Upon completion of the Merger, Merger Sub will merge with and into Analogic, with Analogic surviving as a privately-held company and will cease to be listed on any public market.

3. On May 2, 2018 Defendants (as defined below) filed a Preliminary Proxy Statement on Schedule 14A with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction (the "Proxy").  As described herein, the Proxy omits certain material information with respect to the Proposed Transaction, which renders it false and misleading, in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 140.14a-9 ("Rule 14a-9") promulgated thereunder.

4. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants' wrongdoing described herein.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the

exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.  Plaintiff is, and have been at all times relevant hereto, the owner of Analogic common stock.

9.  Defendant Analogic is incorporated in the Commonwealth of Massachusetts, with its principal executive offices located in Peabody, Massachusetts. Analogic common stock is traded on The Nasdaq Global Select Market under the symbol "ALOG."

10. Defendant Fred B. Parks ("Parks") is the President and Chief Executive Officer of Analogic, and has been a Company director since 2007.

11. Defendant Bernard C. Bailey ("Bailey") is the Chairman of the Analogic Board, and has served as a director since 2010.

12. Defendant Jeffrey P. Black ("Black") has served as a director of Analogic since 2010.

13. Defendant James J. Judge ("Judge") has served as a director of Analogic since 2005.

14. Defendant Michael T. Modic ("Modic") has served as a director of Analogic since 2001.

15. Defendant Stephen A. Odland ("Odland") has served as a director of Analogic since 2016.

16. Defendant Joseph E. Whitters ("Whitters") has served as director of Analogic since 2017.

17. The defendants listed in ¶¶ 10-16 are collectively referred to herein as the "Individual Defendants."

18. The Individual Defendants and Analogic are referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

19. Analogic is company that focuses on healthcare and security technology. As described in the Proxy, the Company "design[s], manufacture[s] and sell[s] advanced medical imaging, ultrasound and security systems and subsystems to original equipment manufacturers, or OEMs, and end users primarily for the healthcare and airport security markets."

20. In soliciting shareholder approval for the Proposed Transaction, Defendants issued the Proxy, which purports to contain a summary/overview of the Proposed Transaction, but omits certain critical information, rendering portions of the Proxy materially incomplete and/or misleading, in violation of the Securities Act provisions discussed herein. As a result, Analogic shareholders lack material information necessary to allow them to make an informed decision concerning whether to vote in favor of the Merger.

Material Omissions Concerning the Merger Process

21. The Proxy omits material information concerning the merger process.

22. *First,* the Proxy fails to disclose important information concerning whether certain bidders are contractually prohibited from submitting topping bids. Specifically, the Proxy notes that "[f]rom September to December 2017, the Company negotiated and entered into non-disclosure agreements with potential bidders" and that "[e]ach non-disclosure agreement contained standstill obligations with terms ranging from 18 months to two years that would terminate upon the signing of a definitive agreement with a third party for the sale of the

4

Company." Proxy at 34-35. In other words, these potential bidders, upon the signing of the Merger Agreement, are now free to submit topping bids. The Proxy, however, then proceeds to note that "[u]ltimately, the Company was in contact with 75 potential strategic and financial buyers . . . regarding their interest in exploring a possible sale" and that, of those 75 parties, "38 ultimately entered into non-disclosure agreements." Proxy at 35. And, the Proxy does not disclose whether any of these 38 non-disclosure agreements contain standstill terms that would prevent any bidder from submitting a topping bid. Such disclosure is crucial because many non-disclosure agreements contain "don't ask, don't waive" provisions, which prevent a party from even asking the Board to waive the standstill. Here, the Proxy disclosed that the non-disclosure agreements signed in December 2017 or earlier contained provisions terminating the standstill upon entry into a definitive merger agreement (meaning, bidders bound by those agreements could step forward to submit a topping bid), but, inexplicably, failed to make the same disclosure with respect to any other non-disclosure agreements.

23.     The omission of the details regarding these non-disclosure agreements renders the Proxy materially misleading because it gives the impression that the counterparties who entered into negotiations with the Company prior to the signing of the Merger Agreement have the ability to come forward with a topping bid, when some may, in fact, be contractually prohibited from doing so. Thus, the omission of this information renders all references to the non-disclosure agreements in the Proxy materially false and misleading.

24.     *Second,* the Proxy fails to fully disclose the potential conflicts of interest of the Company's financial advisor, Citigroup Global Markets, Inc. ("Citi"), which the Company retained to opine that the Merger Consideration was fair, from a financial point of view, to Analogic shareholders.

25. Specifically, the Proxy notes: "Although Citi and its affiliates have not provided during the two-year period prior to the date of Citi's opinion and currently are not providing investment banking, commercial banking or other similar financial services to Analogic or Parent for which services Citi and its affiliates received or expect to receive compensation, Citi and its affiliates may provide such services to Analogic, Parent and their respective affiliates in the future, for which services Citi and its affiliates would expect to receive compensation." Proxy at 56. Notably, the Proxy dodges what is arguably the most important question concerning conflicts of interest: whether Citi had any relationship in the past two years with *Altaris*, the private equity firm that beneficially owns Parent (formed solely for purposes of consummating the Merger), and that is the entity actually acquiring Analogic. Such a prior relationship between Citi and Altaris would create the potential that Citi could be biased in favor of Altaris, rather than Analogic, as Analogic will, in practice, cease to exist following the Merger. Yet the Proxy is silent on this important issue. Moreover, lest the shareholder reading the Proxy assume that the reference to "Parent" refers also to its affiliates (i.e., Altaris), the Proxy disabuses the shareholder of that notion, because in that same sentence, the Proxy (i) repeatedly refers to "Citi and *its affiliates*" and also (ii) specifically notes that Citi and its affiliates "may provide such services to Analogic, Parent *and their respective affiliates* in the future." These repeated other references to "affiliates" leaves a shareholder reasonably wondering whether the Proxy has intentionally evaded addressing the important inquiry of whether Citi has provided services to Altaris in the past two years.

26. Relatedly, it is not entirely clear if reference to "investment banking, commercial banking or other similar financial services" in the above quoted sentence includes financial advisory services (i.e., when a bank provides only advisory work in connection with a

6

transaction, rather than financing it). As already noted, if Citi provided services to Altaris in the past, it could be biased in its favor, even if those services were limited solely to advisory work, which is still an exceedingly lucrative endeavor.[1]

Material Omissions Concerning Citi's Fairness Opinion

27. The Proxy also omits material information concerning the opinion rendered by Citi, which found that the Merger Consideration was fair, from a financial point of view, to Analogic shareholders.

28. *First*, the Proxy omits material information in connection with Citi's Discounted Cash Flow ("DCF") Analysis, which Citi performed in connection with its fairness opinion. Specifically, the Proxy notes that, as part of its DCF, Citi relied on Analogic's "adjusted free cash flows" which Citi computed "by taking cash from operations, and subtracting capital expenditures and share-based compensation," using the figures prepared by management. Proxy at 55. Citi then "calculated the estimated terminal value of Analogic by applying a perpetuity growth rate range of 1.5% to 2.5% to estimated terminal year adjusted free cash flow values of $72 million and $63 million," depending on which management case projection Citi used. *Id.* "Citi then arrived at implied firm value reference ranges by discounting the adjusted free cash flows and implied estimated terminal values to present value" by using discount rate ranges of 8.2% to 9.4%, which was based on a weighted-average cost of capital ("WACC") calculation for Analogic. Based on this analysis, Citi arrived at an implied per share equity value reference range of $81.25-$103.65 (for management's "Case 2A") and $74.40-$94.15 (for management's "Case 2B"). Thus, the $84.00 Merger Consideration fell within both value ranges.

---

[1] The Proxy discloses that Citi will receive a fee "of up to $10.7 million,...approximately $8.12 of which is payable contingent upon consummation of the merger." Proxy at 56.

29.     The problem, however, was that the Proxy provided no line item detail concerning Analogic's adjusted free cash flows, for either case management projection. *See* Proxy at 61. Similarly, the Proxy failed to disclose the basis for Citi's perpetuity growth rate ranges or inputs used to calculate Analogic's WACC (aside from a vague reference to Citi's utilization of "the capital asset pricing model with inputs that Citi determined were relevant based on publicly available data and Citi's professional judgment," *see* Proxy at 56).

30.     Information concerning the basis for the perpetuity growth rate range and WACC used by Citi is material to shareholders in deciding how to vote their shares, as the lack of disclosure of the assumptions and inputs used by Citi in its DCF prevents shareholders from understanding the context of the figures or considering whether any of Citi's ranges derived therefrom are anomalous. (Indeed, the Proxy, at 55-56, discloses the basis for Citi's discount rate range of 8.2%-9.4%). Absent this information, Analogic shareholders are unable to determine whether the Proposed Transaction is indeed fair and in their best interest. Indeed, the real informative value of the financial advisor's work is not in its conclusion, but in the valuation analyses that buttress that result. When a financial advisor's endorsement of the fairness of a transaction is touted to shareholders (*see* Proxy at 48), the key inputs used to arrive at those conclusions, must also be fairly disclosed.

31.     *Second,* the Proxy fails to disclose whether Citi incorporated the Company's net operating loss carry forwards ("NOLs") into its DCF. Indeed, Analogic disclosed in a recent SEC filing that it had NOLs of approximately $57.9 million. Given the Proxy's disclosure of 12,501,638 shares of common stock issued and outstanding (not including shares issuable upon exercise of options), Analogic's gross NOL, on a *pro rata* basis would be over $4.60, which is not an insubstantial figure. Without (i) adequate disclosure concerning whether Citi considered

8

Analogic's NOLs (when said consideration may have affected Citi's analysis), or (ii) an explanation as to why the NOLs would have not substantially affected Citi's analysis, shareholders are deprived of material information concerning the adequacy of Citi's methods. Accordingly, the Proxy's failure to provide additional disclosure calls into question Citi's opinion—which the Proxy touts as grounds to support the Merger—that the Merger Consideration is fair.

32. *Third,* the Proxy omits material information concerning Citi's Selected Public Companies Analysis. As part of this analysis, Citi reviewed financial and stock market information of Analogic and eight companies Citi found to be comparable. Proxy at 54. Of these companies, Citi reviewed their (i) "firm values," which was equity values as of April 9, 2018 plus debt, less cash and cash equivalents and other adjustments, as a multiple of estimated EBITDA for calendar year 2018 (i.e., an "EBITDA multiple") and (ii) per share equity values (i.e., "P/E values") as of April 9, 2018 "as a multiples of earning per share ["EPS"]…using the estimated EPS for calendar year 2018." Proxy at 55. This derived a firm multiple range of 8.3x to 13.4x (with a median of 10.7x), and a per share equity value range of 15.7x to 24.2x (with a median of 17.8x). Then, based on Citi's belief that "Analogic was more comparable to companies on the lower end of the range," Citi derived an 8.3x-10.7x range for firm value and a 15.7x to 17.8x range for per share equity value. Applying these multiples to Analogic's "Case 2B" projections, Citi derived a per share reference value range which suggested that the $84.00 Merger Consideration was appropriate. However, the Proxy failed to disclose the EBITDA and P/E multiples of the six selected companies.

33. This information is important for shareholders evaluating the merit of Citi's decision-making, specifically in evaluating whether any of the companies selected by Citi are

anomalous. This information is particularly relevant here, (i) given Citi's decision to further refine the ranges it derived, based on its belief that "Analogic was more comparable to companies on the lower end of the range," and (ii) given that in a recent, previous shareholder proxy, Analogic identified *eighteen* companies in its peer group, yet only one of these eighteen companies appears as one of Citi's selected companies, calling into question the wisdom of Citi's selection of the six similar companies in its analysis.

34. *Third*, with respect to Citi's Wall Street price target analysis, the Proxy fails to disclose the inputs used by Citi in calculating Analogic's cost of equity, which informed its decision to use a discount rate of 9.8%. Proxy at 56. As noted earlier, the real informative value of Citi's work is not in its conclusion, but in the valuation analyses that buttress that result.

35. *Fourth*, as with Citi's principal DCF analysis, the Proxy fails to disclose material information concerning Citi's DCF analysis of Analogic based on an alternate set of management projections (which the Proxy refers to as the "Case 1" forecasts). Proxy at 56. Specifically, the Proxy provides no line item detail concerning the adjusted free cash flows, the Proxy provides no disclosure concerning the basis for Citi's perpetuity growth rate range or the inputs used to calculate Analogic's WACC, nor does the Proxy disclose whether Citi evaluated Analogic's NOLs in connection with this DCF analysis.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Analogic (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

37. This action is properly maintainable as a class action for the following reasons:

a. The Class is so numerous that joinder of all members is impracticable. As of April 27, 2018 there were over 12 million shares of Analogic common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) and 20(a) of the Exchange Act in connection with the Proposed Transaction; and (ii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy as currently composed.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

f. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

g. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## CAUSES OF ACTION

### COUNT I
### Claim for Violation of Section 14(a) of the Exchange Act
### and Rule 14a-9 Promulgated Thereunder
### (Against All Defendants)

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

40.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that solicitation communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a).

41.     Rule 14a-9 further provides that, "[t]he fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made." 17 C.F.R. § 240.14a-9(b).

42.     As discussed herein, the Proxy misrepresents and/or omits material facts concerning the Merger.

43. Defendants prepared, reviewed, filed and disseminated the false and misleading Proxy to Analogic shareholders. In doing so, Defendants knew or recklessly disregarded that the Proxy failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44. The omissions and incomplete and misleading statements in the Proxy are material in that a reasonable shareholder would consider them important in deciding how to vote their shares. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

45. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Proxy, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Merger negotiation and sales process and reviewing Citi's complete financial analyses purportedly summarized in the Proxy.

46. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Merger.

47. Analogic is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

48. Defendants knew that Plaintiff and the other members of the Class would rely upon the Proxy in determining whether to vote in favor of the Merger.

49. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(a) of the Exchange Act and Rule 14d-9, absent injunctive relief from the Court, Plaintiff and the other members of the Class will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to vote in favor of the Merger.

50.     Plaintiff and the Class have no adequate remedy at law.

## COUNT II
### Claim for Violations of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Analogic within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Analogic, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

53.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Merger. They were thus directly connected with and involved in the making of the Proxy.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

56. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. Directing the Individual Defendants to disseminate a merger proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 14, 2018                **HUTCHINGS BARSAMIAN MANDELCORN, LLP**

*/s/Theodore M. Hess-Mahan*
Theodore M. Hess-Mahan, BBO #557109
110 Cedar Street, Suite 250
Wellesley Hills, MA 02481
(781) 431-2231
thess-mahan@hutchingsbarsamian.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**WOLF POPPER LLP**
Carl L. Stine
Adam J. Blander
845 Third Avenue
New York, New York 10022
Tel.: 212-759-4600
Fax: 212-486-2093
Email: cstine@wolfpopper.com